MR. JUSTICE SHEEHY,
dissenting:
I dissent from the foregoing opinion for several reasons.
First, Clinton J. White should be relieved of any liability for the first $217,000 of drilling expenses charged by Drilcon. It is clear that before Drilcon began drilling the well on August 28, 1981, it had been assured by an escrow officer of Sun Escrow of Palm Springs, California, that the escrow company had funds on deposit of $459,000 out of which to pay Drilcon’s expenses. Drilcon placed no reliance on Clinton J. White or Roil Energy Corporation through any statement or representation before it began drilling. It relied exclusively upon the fraudulent representation of Sun Escrow Company, that the funds were in place to pay its drilling costs. On Sep *180 tember 21, 1981, after Drilcon had drilled down 7,700 feet and earned approximately $217,000 in expenses, Sun Escrow Company wrote Drilcon that there was no money in the escrow.
Clinton White was as much a victim of the fraudulent actions of Sun Escrow as was Drilcon. Up to that point, Drilcon placed no reliance on either Clinton White or Roil Energy, and gave evidence of that nonreliance by refusing to proceed at all until an escrow had been established to Drilcon’s satisfaction. Any liability at all of Clinton White, therefore, should exclude the first $217,000 of expenses because that expense was not incurred by Drilcon through any fault, representation, constructive fraud, negligence, or other legal theory obligating Clinton White.
Drilcon recommenced drilling when it received from Holms his fraudulent asset statement and a telegram which Holms sent, purportedly binding Clinton White personally to the drilling cost. Drilcon began drilling again in spite of drilling again having been told by White that he was not going to guarantee the cost of drilling personally and that Holms had no authority to make Clinton White personally liable. Mr. Ed White, the vice-president of Drilcon testified:
“Q. Did Mr. Clinton White ever tell you he would not give his personal guarantee? A. I don’t recall him ever saying that. The only thing I ever remember him saying was that Val Holms was not authorized to speak on his behalf.
“Q. Did you have any understanding after talking to Clinton White whether he would give his personal guarantee. A. I don’t have a feeling that he would or wouldn’t. He didn’t deny that he wouldn’t, and he didn’t say that he would.”
As to whether Holms was vice-president of Roil Energy Corporation, the court itself wanted the evidence to be clear and questioned the witness:
“(BY THE COURT) Q. It has been pointed out that Clinton White never denied, that Val Holms was vice-president. I guess I would reverse the question. Did Clinton White ever tell you that Val Holms was the vice-president of Roil? A. No.”
Drilcon, therefore had no basis upon which to rely on any personal guaranty of Clinton White or any representation that Holms had authority to bind Clinton White for drilling expenses.
Because Drilcon was specifically warned that White was not personally liable and that Holms had no authority to bind him, the dis *181 cussions in the majority opinion about constructive fraud and piercing the corporate veil are irrelevant. Drilcon proceeded at its peril to complete the drilling of the well.
Nonetheless, some remarks about the majority discussion of constructive fraud and piercing the corporate veil are necessary.
We make fuzzy the liability theory of constructive fraud when we outside the confidential or fiduciary relationships and find that “special circumstances” can give rise to liability under the theory of constructive fraud. The statutory bases for constructive fraud are a breach of duty or an act or omission especially declared to be fraudulent by the law, each without respect to actual fraud. Section 28-2-406, MCA. Unless we have an act especially declared fraudulent by the law (not present here), we should confine constructive fraud to those cases involving a breach of duty and ordinarily that breach of duty arises either through a confidential or a fiduciary relationship. We have confused the liability theory of constructive fraud (mea culpa) by including in the constructive fraud theory “special circumstances” in cases which really involve negligent misrepresentations of fact. In cases of negligent misrepresentation, the liability is founded not on a breach of a legal duty arising out of constructive or fiduciary relationships, but rather out of a duty to speak in the circumstances, and where fraudulent intent is not an element. To use an example first posed by the late, great Cardozo, it we think of the fields of liability for constructive fraud and misrepresentation as concentric circles with a common center and differing radii, where the liability under each theory is based on misrepresented facts, the breach of a legal duty will create liability whereas a negligent breach may not; the first because the liability is imposed by law, whereas the liability for a negligent breach is based upon ordinary care, and comparative negligence may be considered. See Ultramares Corporation v. Touche (N.Y. 1931), 255 N.Y. 170, 174 N.E. 441.
It is because we confused these two fields of liability that the district judge in this case submitted to the jury, as a comparative negligence issue, the determination of comparative negligence of Drilcon, Roil, Sun Escrow, Clinton White and Holms. The jury found Clinton White 95% negligent, and Drilcon 5% negligent. A finding of comparative negligence is completely inconsistent with liability on the theory of constructive fraud, where there is no comparison to be made (undoubtedly the court was thinking of mitigation of damages, and submitted it in the form of comparative negligence). Moreover, because the actions of Holms and of Sun Escrow Company were *182 fraudulent, those actions were not be compared with the negligence, if any, of White.
The issues in this case were hopelessly confused, and I would reverse and remand for a new trial. It goes without saying that if constructive fraud is not sustainable in this case, there could be no piercing of the corporate veil.